## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                            :

LINCARE INC.,                 :
                           :
         Plaintiff,       :
                           :
v.                       :      CIVIL ACTION NO.:
                           :
                           :
BRIAN DESO            :
                           :
         Defendant.    :
_____:

### COMPLAINT AND DEMAND FOR A JURY TRIAL

### Introduction

1.    This is an action to stop a skilled and experienced sales representative from competing unfairly with Plaintiff Lincare Inc. ("Lincare").  As a condition of employment with Lincare, Defendant Brian Deso ("Deso") agreed, *inter alia*, that for a limited duration of 12 months post-employment he would not perform services competitive to Lincare within a 60-mile radius of where he worked for Lincare for almost a decade in Worcester, Massachusetts.  Mr. Deso also agreed that for a period of 12 months post-employment he would not:  (1) solicit, transact, or accept business from Lincare's clients, customers and referral sources; and (2) solicit or encourage current Lincare employees to compete with Lincare.  Yet, since leaving Lincare in March 2022, that is exactly what he has done by working for one of Lincare's primary competitors with a location in Marlborough, Massachusetts, less than 60 miles from Worcester, Massachusetts and soliciting business from Lincare's customers in the Worcester country region.  Prior to filing this lawsuit, Lincare sent correspondence to Deso and his current employer, Community Surgical Supply of

Tom's River, Inc. ("CSS"), demanding that Deso and CSS cease and desist from this unfair competition.   To date, Deso continues to openly solicit business from Lincare's primary competitors to the present day despite knowledge that his actions violate his agreement with Lincare.  As such, Lincare has no choice but to seek redress from this Court to:  (1) enjoin Deso from continuing to flout his contractual and other legal obligations; and (2) award damages for the injuries he has caused.

## PARTIES, JURISDICTION AND VENUE

2.      Lincare is a Delaware corporation with a principal place of business at 19387 US 19 North, Clearwater, FL.

3.      Upon information and belief, Deso is a Massachusetts citizen and resident who resides at 102 Bryn Mawr Avenue, Auburn, MA.

4.      This action is brought in the United States District Court for the District of Massachusetts, Worcester Division.

5.      The Court has subject-matter jurisdiction  over this action because the parties are residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in the Worcester Division because one or more parties to the action reside in Worcester County and the events giving rise to the cause of action occurred within Worcester County.

## FACTUAL ALLEGATIONS

### *Deso's Employment with Lincare*

7.      Lincare is a leading provider of in-home respiratory care products and services throughout the contiguous United States. Its products and services include, but are not limited to, stationary and portable oxygen products, durable medical equipment and supplies, home oxygen therapy,

sleep apnea therapy, , nebulizer therapy, and home PT/INR monitoring equipment, supplies, training and education for self-testing at home.

8.      For almost thirty years, Lincare has developed significant goodwill and substantial business relationships with its clients and customers, who are primarily doctors, physicians, case management officers and respiratory departments in hospitals and university campuses.

9.      In or around February 2014, Lincare hired Deso as a Medical Sales Representative.

10.     Deso worked for Lincare out of its Worcester, Massachusetts location.

11.     Deso, a Medical Sales Representative, was assigned to service clients while at Lincare, including St. Vincent's Hospital, UMass Memorial Campus, UMass Memorial University Campus, Fairlawn Rehabilitation Hospital and the Jewish Healthcare Center, all located in Worcester County, Massachusetts.

12.      Deso did not initiate Lincare's business relationship with these clients, nor did he bring in other new clients while employed by Lincare.

13.     The goodwill and business relationships with the doctors and other clients and customers in these hospitals were established by Lincare starting in 1995, decades prior to Deso's employment with Lincare.

14.     Lincare has invested significant resources, time, and money into developing its customer relationships and goodwill.

15.     Lincare's customer relationships and goodwill are necessary to maintain Lincare's successful market position.  As such, Lincare goes to great lengths to protect its interests from unfair competition by former employees.

16.     Through his employment with Lincare, Deso became aware of Lincare's customers and details of contracts with its customers.  Lincare educated Deso with respect to its clients, which

clients to pursue in the market, and how to develop strong relationships with key contacts of Lincare's customers and potential customers.  Such information could be used to undercut Lincare in the marketplace or to otherwise undermine Lincare.

17.     In or around March 2022, Deso resigned from employment with Lincare.

18.     During a conversation with Deso about his resignation, Deso stated that he was going to be selling new technology and that this would not interfere with his non-solicitation and non-competition obligations to Lincare.

19.     Deso refused to tell Lincare the name of the company that he was going to be working for or its location.

### Deso's Employment Agreement with Lincare

20.     On February 2, 2014, Deso entered into a written Nonsolicitation and Nondisclosure Agreement with Lincare, a true and accurate copy of which is attached hereto as Exhibit 1 ("Agreement").

21.     Lincare agreed to employ Deso in consideration for his agreement to abide by the terms of the Agreement.

22.     The Agreement provides, *inter alia,* that during his employment and for a period of 12 months from his voluntary or involuntary termination from employment with Lincare, Deso would not directly or indirectly, engage or participate, attempt to engage or participate, or assist any person with engaging or participating in any act that constitutes any of the following:

> (a) soliciting, encouraging, convincing, assisting or otherwise facilitating or causing any person who was a Lincare client, customer, referral source or supplier at any time during the 12 months preceding the termination of Employee's employment to i) eliminate, reduce or otherwise affect the business that they transact or may transact with Lincare; or ii) transact any business with any competitor or potential competitor of Lincare;

(b) accepting business, commission, fees, salary, compensation or any other consideration from any person who was a Lincare . . . competitor at any time during the 12 months preceding the termination of Employee's employment with Lincare; or

(c) entering into any employment, contractual, partnership, corporate, customer, consulting, supplier or other business relationship or transaction of any kind with any person who was a Lincare . . . competitor at any time during the 12 months preceding the termination of Employee's employment with Lincare" ("Non-Solicitation of Customers Provisions").

23.     The Agreement also provides, *inter alia,* that during his employment and for a period of 12 months from his voluntary or involuntary termination from employment with Lincare, Deso would not directly or indirectly engage or participate, attempt to participate, or assist any person with "soliciting, encouraging, convincing or otherwise assisting any person who was an employee, consultant, or contractor of Lincare during the 12 months preceding the termination of [Deso's] employment with Lincare to compete with Lincare, to perform services for or on behalf of any competitor to Lincare, to stop performing services for or on behalf of Lincare, to change or otherwise affect the quality or quantity of their services to or on behalf of Lincare, to stop performing services for or on behalf of Lincare, to change or otherwise affect the quality or quantity of their services to or on behalf of Lincare or to change the cost, prices, or any other term or condition of such employees." (hereinafter referred to as "Non-Solicitation of Employees Provision").

24.     The Agreement also provides, *inter alia,* that during his employment and for a period of 12 months from his voluntary or involuntary termination from employment from Lincare, Deso would not directly or indirectly engage or participate, attempt to participate, or assist any person "within a 60-mile radius of any Lincare location at which [Deso] was employed, or over which [Deso] had management or other responsibility (regardless of whether [he] was physically located at said location) during the 18-month period preceding the termination of [Deso's] employment

5

from Lincare, engaging in a business or other activity which is competitive to Lincare's." (hereinafter referred to as "Non-Competition Provision").

25.    In the Agreement, Deso agreed not to directly or indirectly disclose any of Lincare's Proprietary Information (as defined in the Agreement) and to return at Lincare's request all Proprietary Information within his possession, custody or control.  (hereinafter referred to as "Non-Disclosure Provision").

26.    Proprietary Information as defined in the Agreement includes, *inter alia,* all lists, strategies, methods, pricing, costs, expenses, revenue, income and other financial information relating to Lincare and its current and potential customers, clients, suppliers and referral sources.

27.    Deso reaffirmed his agreement not to disclose Lincare's confidential and proprietary information in a Memorandum of Employee's Agreement that he signed on or about February 4, 2014, a true and accurate copy of which is attached hereto as Exhibit 2.

28.    Lincare has legitimate business interests in protecting its trade secrets, its valuable confidential business and professional information, its substantial relationships with clients and customers and referral sources, and the goodwill derived therefrom, as well as the goodwill associated with Lincare's established relationships with clients and customers in the area of in-home respiratory care products and services in and around the area of Worcester country (collectively "Legitimate Business Interests").

29.    The restrictive covenants in Deso's Agreement are reasonable in time, geographic area, and line of business.

30.    The restrictive covenants in Deso's Agreement are necessary to protect Lincare's Legitimate Business Interests.

### *Deso's Competitive Activities with Community Surgical Services Infringe on Lincare's Legitimate Business Interests.*

31.     Upon information and belief, in or about March 2022, Deso began employment with Community Surgical Supply ("CSS") in a sales-related role.

32.     CSS is in the business of providing in-home respiratory care products and services.[1]

33.     CSS' services, include, but are not limited to, home oxygen products and services, sleep apnea treatments and machines, and nebulizer therapy equipment and medication, and at-home self PT/INR testing.[2]

34.     CSS's Massachusetts location is at 50 D'Angelo Drive, Marlborough, MA 01752, 24.3 miles from Lincare's Worcester location at 69 Main Street, Cherry Valley, MA 01611.

35.     CSS provides products and services that are competitive to Lincare.

36.     Through his relationship with CSS, Deso is in violation of the terms of the Agreement.

37.     Upon information and belief, while working for CSS, Deso visited clients and customers of Lincare in, or within 60 miles of, Worcester, Massachusetts, for the purpose of soliciting business and/or assisting CSS with accepting business.

38.     Through his relationship with CSS, Deso has or imminently will directly or indirectly engage or participate, attempt to participate, or assist with soliciting, encouraging, convincing, assisting or otherwise facilitating or causing any person who was a Lincare client, customer, referral source or supplier at any time during the 12 months preceding the termination of [Deso's] employment to i) eliminate, reduce or otherwise affect the business that they transact or may transact with Lincare; or (ii) transact any business with any competitor or potential competitor of Lincare.

---

[1] *See* About CSS, *available at* https://communitysurgical.com/pages/about-us (last visited November 8, 2022).
[2] *See* CSS Products and Services, *available at* https://communitysurgical.com/pages/therapies (last visited November 8, 2022).

39.     Through his relationship with CSS, Deso has or imminently will directly or indirectly engage or participate, attempt to participate, or assist with accepting business, commission, fees, salary, compensation or any other consideration from a  Lincare client, customer, referral source, supplier or competitor at any time during the 12 months preceding Deso's termination of employment with Lincare.

40.     Through his relationship with CSS, Deso has or imminently will directly or indirectly engage or participate, attempt to participate, or assist any person with "entering into any employment, contractual partnership, corporate, customer, consulting, supplier or other business relationship or transaction of any kind with any person who was a Lincare client, customer, referral source supplier or competitor at any time during the 12 months preceding the termination of [Deso's] employment."

41.      Through his relationship with CSS, Deso has or imminently will directly or indirectly engage or participate, attempt to participate, or assist soliciting, encouraging, convincing or otherwise assisting any person who was an employee, consultant, or contractor of Lincare during the 12 months preceding the termination of his employment with Lincare to compete with Lincare, to perform services for or on behalf of any competitor to Lincare, to stop performing services for or on behalf of Lincare, to change or otherwise affect the quality or quantity of their services to or on behalf of Lincare, to stop performing services for or on behalf of Lincare, to change or otherwise affect the quality or quantity of their services to or on behalf of Lincare or to change the cost, prices, or any other term or condition of such employees.

42.     Through his relationship with CSS, Deso has or imminently will directly or indirectly engage or participate, attempt to participate, or assist any person within a 60-mile radius of any Lincare location at which he was employed, or over which he had management or other

responsibility (regardless of whether he was physically located at said location) during the 18-month period preceding the termination of his employment from Lincare, engaging in a business or other activity which is competitive to Lincare's business or other activity.

43.   Through his relationship with CSS, Deso has or imminently will directly or indirectly disclose any of Lincare's Proprietary Information (as defined in the Agreement).

44.   Upon information and belief, Deso has failed to return at Lincare's request all Proprietary Information within his possession, custody or control.

45.   On March 30, 2022, by letter though the United Postal Service, Lincare notified CSS of the existence of the Memorandum of Employee's Agreement and provided it with a copy of the Memorandum of Employee's Agreement.

46.   Lincare sent Deso a copy of the March 30, 2022 letter.

47.   In the March 30, 2022 letter, Lincare requested that CSS confirm by April 11, 2022, that Deso is not in violation of his obligations set forth in the Memorandum of Employee's Agreement.

48.   CSS has not confirmed that Deso is not in violation of his obligations set forth in the Memorandum of Employee's Agreement or otherwise replied to the March 30, 2022 letter.

49.   In or around April 5, 2022, Deso sent text messages to his former coworker and current Lincare employee, admitting he was working for a competitor in the same area, a true and accurate copy of which is attached hereto as Exhibit 3.

50.   Deso also admitted in the text message communication that a doctor at St. Vincent's hospital gave a sale for an oxygen tank to him at CSS.  See Ex. 3, p. 2.

51.   In or around April 2022, Deso was photographed in the lobby of St. Vincent's Hospital, a Lincare customer, meeting with St. Vincent's employees and staff, a true and accurate copy of which is attached hereto as Exhibit 4.

52.     On May 12, 2022, by Overnight Delivery, Lincare sent Deso a letter notifying him that it was investigating a suspected breach of the restrictive covenants in the Agreement.  In the May 12, 2022 letter, Lincare requested that Deso cease and desist from violating the terms of the Agreement, including but not limited to providing competitive services with the 60-mile restricted territory set forth in the Agreement. A copy of the Agreement was enclosed with the May 12, 2022 letter.

53.     Deso did not respond to Lincare's letter dated May 12, 2022.

54.     Upon information and belief, Deso did not cease or desist violating the terms of the Agreement.

55.     Upon information and belief, Deso has encouraged Lincare employees to perform services that are competitive to Lincare.

56.     In or around May 2022, Deso sent text messages to former coworkers in an effort to perform services that are competitive to Lincare, true and accurate copies of which are attached hereto as Exhibit 5.

57.     Upon information and belief, Deso continues to visit UMass Memorial University Campus, a Lincare client, and currently sells them CSS equipment.

58.     Upon information and belief, Deso continues to visit St. Vincent's Hospital, a Lincare client and currently sells them CSS equipment.

59.     Additionally, CSS oxygen tanks that were, upon information and belief, sold by Deso were photographed in the case management offices at St. Vincent's hospital, a true and accurate copy of which is attached hereto as Exhibit 6.

60.    In the May 12, 2022 letter, Lincare directed Deso to promptly return any and all Lincare information and property within his custody, control, including Lincare's Confidential and Proprietary Information.

61.    Upon information and belief, Deso has Lincare's information and property within his custody, which he has not returned.

62.    On June 28, 2022, Lincare sent a letter to CSS notifying them that Deso was in violation of the Agreement and demanding that all activities restricted by the Agreement cease and desist.

63.    Lincare demanded written assurance from CSS by July 1, 2022, that Deso was not in violation of the Agreement.

64.    CSS did not respond to Lincare's letter dated June 28, 2022.

## COUNT I – BREACH OF CONTRACT

65.    Lincare repeats and incorporates herein by reference the allegations contained in the preceding paragraphs of this Complaint.

66.    Lincare and Deso are parties to a contract; namely, the Nonsolicitation and Nondisclosure Agreement attached hereto as Exhibit 1.

67.    Deso agreed to adhere to the Non-Competition Provision set forth in Paragraph 2(e) of the Nonsolicitation and Nondisclosure Agreement.

68.    Defendant agreed to adhere to the Non-Solicitation of Customers Provisions set forth in Paragraphs 2(a), 2(b), and 2(c) of the Nonsolicitation and Nondisclosure Agreement.

69.    Deso agreed to adhere to the Non-Solicitation of Employees Provision set forth in Paragraph 2(d) the Nonsolicitation and Nondisclosure Agreement.

70.     The restrictive covenants contained in the Nonsolicitation and Nondisclosure Agreement are enforceable because they are reasonable in time and scope and are reasonably necessary to protect Lincare's Legitimate Business Interests.

71.     Lincare performed its obligations under the Nonsolicitation and Nondisclosure Agreement.

72.     Deso has failed to perform his obligations under the Nonsolicitation and Nondisclosure Agreement.

73.     Defendant has and continues to breach the Non-Competition Provision of the Nonsolicitation and Nondisclosure Agreement by performing services for CSS within a 60-mile radius of where he worked for Lincare.

74.     Defendant has and continues to breach the Non-Solicitation of Customers Provisions of the Nonsolicitation and Nondisclosure Agreement by soliciting and/or encouraging Lincare's customers to purchase and services from CSS.

75.     Defendant has and continues to breach the Non-Solicitation of Customers Provisions of the Nonsolicitation and Nondisclosure Agreement by soliciting and/or encouraging Lincare's customers to transact business with CSS.

76.     Defendant has and continues to breach the Non-Solicitation of Customers Provisions of the Nonsolicitation and Nondisclosure Agreement by transacting business on behalf of CSS with Lincare's customers.

77.     Defendant has and continues to breach the Non-Solicitation of Customers Provisions of the Nonsolicitation and Nondisclosure Agreement by assisting, facilitating or causing Lincare's customers to transact business with CSS.

78.     Defendant has and continues to breach the Non-Solicitation of Customers Provisions of the Nonsolicitation and Nondisclosure Agreement by accepting business on behalf of CSS from Lincare's customers.

79.     Defendant has and continues to breach the Non-Solicitation of Employees Provision of the Nonsolicitation and Nondisclosure Agreement by encouraging Lincare employees to perform services that are competitive to Lincare.

80.     Deso's breach of the Agreement and/or Memorandum presents an immediate threat of irreparable harm to Lincare.  In addition, Deso had caused Lincare damages in an amount to be determined at trial.

## <u>COUNT II – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS</u>

81.     Lincare repeats and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

82.     Lincare has business and contractual relationships of economic benefit with its customers.

83.     Deso had knowledge of the existence of these business and contractual relationships and/or contemplated contracts.

84.     Deso is knowingly and willingly using unlawful means to induce Lincare customers to break their business relationships and agreements with Lincare.

85.     Deso's interference was both intentional and malicious.

86.     As a direct, proximate and intended result of this intentional interference with business relations, Lincare has lost, and may continue to lose, sales, profits and business advantage.

        WHEREFORE, Lincare demands judgment against Deso as follows:

1.      Temporary and permanent injunctive relief against Deso, whether acting alone or in concert

with others, requiring him to comply with his contractual obligations to Lincare.

2.      An order requiring Deso to identify all CSS clients and/or customers with whom he has
had contact since March 1, 2022.

3.      An order permitting Lincare to take expedited discovery to determine the scope and nature
of Deso's unlawful conduct.

4.      For a trial by jury on all issues so triable;

5.      Award judgment for Lincare on all Counts in the Complaint;

6.      Award Lincare its damages, costs, attorneys' fees and interest to the extent permitted by
law; and

7.      Award Lincare such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

The Plaintiff demands a jury trial on all claims herein.


                                        Respectfully Submitted,

                                        */s/ John S. Gannon*
                                        John S. Gannon, Esq.
                                        BBO No. 683845
                                        Trevor R. Brice, Esq.
                                        BBO No. 706213
                                        Skoler, Abbott & Presser, P.C.
                                        One Monarch Place, Suite 2000
                                        Springfield, Massachusetts  01144
                                        Tel.: (413) 737-4753/Fax:  (413) 787-1941
Dated:  November 9, 2022                E-Mail:  JGannon@skoler-abbott.com

                                        *Counsel for Plaintiff*